FILED
MAR 10 2011

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| MICHAEL GLOVER, | Civil No. 09-484-AC |
| Plaintiff, | **FINDINGS AND RECOMMENDATION** |
| v. | |
| MICHAEL J. ASTRUE,<br>Commissioner of Social Security | |
| Defendant. | |

ACOSTA, Magistrate Judge:

Plaintiff Michael Glover ("Glover") seeks judicial review of the Social Security Commissioner's final decision denying his applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act ("Act"). This court has jurisdiction under 42 U.S.C. § 405(g).

For the reasons below the Commissioner's decision should be REVERSED and REMANDED for the immediate calculation and award of benefits.

1 - FINDINGS AND RECOMMENDATION

## BACKGROUND

Born in 1947 (Tr. 69[1]), Glover has a Master's degree in Public Administration. Tr. 360. Glover reports a work history as a tribal education director for the Hopi tribe, and as a warehouse worker. Tr. 96. Glover applied for DIB and SSI on June 21, 2002, alleging disability since December 17, 1994 (Tr. 69), due to the effects of a gunshot wound to the face, including blindness in one eye and a permanent tracheotomy, and arthritis. Tr. 80. The Commissioner denied his applications initially and upon reconsideration (Tr. 28-38), and an Administrative Law Judge ("ALJ") held hearings on January 27, 2005, and June 7, 2005. Tr. 348-99. On September 22, 2005, the ALJ found Glover not disabled. Tr. 11-25. Glover appealed to this court and on May 22, 2007, this court remanded the matter for further proceedings. Tr. 423-32. This court specifically instructed the ALJ to recontact medical expert Dr. Rullman and reassess Glover's testimony and the opinion of treating physician Dr. Dover. Tr. 432.

The ALJ held a third hearing on March 26, 2008, and again found Glover not disabled on February 2, 2009. Tr. 40-317. Glover again appeals.

Notably, the Commissioner found Glover disabled as of February 2, 2007. Tr. 403. Glover thus challenges the ALJ's decision pertaining to his non-disability status before that date.

## DISABILITY ANALYSIS

The Commissioner engages in a sequential process encompassing between one and five steps in determining disability under the meaning of the Act. 20 C.F.R. §§ 404.1520; 416.920; *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). Glover challenges the ALJ's evaluation of his testimony and that

---

[1] Citations "Tr." refer to indicated pages in the official transcript of the administrative record filed with the Commissioner's Answer February 14, 2010 (Docket #13).

of a lay witness, as well as the opinions of two treating physicians.

At step one, the ALJ determines if the claimant is performing substantial gainful activity. If he is, the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(i); 416.920(a)(4)(i). At step two, the ALJ determines if the claimant has "a severe medically determinable physical or mental impairment" that meets the twelve-month duration requirement. 20 C.F.R. §§ 404.1509, 404.1520(a)(4)(ii); 416.909; 416.920(a)(4)(ii). If the claimant does not have such a severe impairment, he is not disabled. *Id.*

At step three, the ALJ determines if the severe impairment meets or equals a "listed" impairment in the regulations. 20 C.F.R. §§ 404.1520(a)(4)(iii); 416.920(a)(4)(iii). If she determines the impairment meets or equals a listed impairment, the claimant is disabled. 20 C.F.R. §§ 404.1520(d); 416.920(d).

If adjudication proceeds beyond step three the ALJ must first evaluate medical and other relevant evidence in assessing the claimant's residual functional capacity ("RFC"). The claimant's RFC is an assessment of work-related activities the claimant may still perform on a regular and continuing basis, despite limitations imposed by his impairments. 20 C.F.R. §§ 404.1520(e); 416.920(e); Social Security Ruling ("SSR") 96-8p. The ALJ uses this information to determine if the claimant can perform his past relevant work at step four. 20 C.F.R. §§ 404.1520(a)(4)(iv); 416.920(a)(4)(iv).

If proceedings reach step five, the Commissioner must determine if the claimant is capable of performing work existing in the national economy. 20 C.F.R. §§ 404.1520(a)(4)(v), 404.1520(f); 416.920(a)(4)(v); 416.920(f); *Yuckert*, 482 U.S. at 141-2; *Tackett v. Apfel*, 180 F.3d 1094, 1099 (9th Cir. 1999).

The initial burden of establishing disability rests upon the claimant. *Tackett*, 180 F.3d at 1098. If the process reaches the fifth step, the burden of production shifts to the Commissioner to show that "the claimant can perform some other work that exists in the national economy, taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Id.* at 1100. If the Commissioner meets this burden the claimant is not disabled. 20 C.F.R. §§ 404.1566; 404.1520(g); 416.966; 416.920(g).

## THE ALJ'S FINDINGS

The ALJ found that Glover had not performed substantial gainful activity at step one, and found Glover's degenerative joint disease, osteoarthritis, and lack of nasal airway with tracheotomy "severe" at step two. Tr. 406. The ALJ found that Glover's impairments did not meet a listed disorder at step three (Tr. 407), and found that Glover could perform a reduced range of light work. Tr. 408. The ALJ elaborated this RFC finding at length:

> The record supports the claimant is right hand dominant. He can read, write, and subtract. He can sit 8 hours in an 8 hour day, one hour at a time, and can stand and walk eight hours in an eight hour day, on hour at a time. He can lift 15 pounds occasionally (up to 1/3 of the workday) and can lift 10 pounds frequently (up to 2/3 of the workday). He must avoid exposure to excess levels of dust. He can get along with people, understand and follow directions, make judgments, persist to the completion of tasks, react appropriately to stress, and behave in an acceptable manner. He should avoid work requiring fine assembly on more than an occasional basis, but can use his fingers for keyboarding or writing up to one hour at a time. Continuous talking should be limited to one hour. He should avoid climbing ladders, scaffolds and ropes, balancing, crouching squatting, and crawling. Bending and kneeling should be limited to picking up things he has dropped. He should avoid jobs requiring three dimensional perception or fine visual precision.

Tr. 408. The ALJ found that Glover could perform his past relevant work as an educational director at step four in the sequential proceedings. Tr. 415. The ALJ therefore found Glover not disabled prior to February 2, 2007. Tr. 416-17.

## STANDARD OF REVIEW

The reviewing court must affirm the Commissioner's decision if the Commissioner applied proper legal standards and the findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Batson v. Comm'r of the Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). "Substantial evidence" means "more than a mere scintilla, but less than a preponderance." *Bray v. Comm'r of the Soc. Sec. Admin*, 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.*

The reviewing court may not substitute its judgment for that of the Commissioner. *Robbins v. Soc. Sec. Admin,* 466 F.3d 880, 882 (9th Cir. 2005); *Edlund v. Massinari,* 253 F.3d 1152, 1156 (9th Cir. 2001). Thus, where the evidence is susceptible to more than one rational interpretation, the ALJ's conclusion must be upheld, even where the evidence can support either affirming or reversing the ALJ's conclusion. *Burch v. Barnhart,* 400 F.3d 676, 679 (9th Cir. 2005). The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities. *Andrews,* 53 F.3d at 1039.

In determining a claimant's RFC, an ALJ must consider all relevant evidence in the record, including, *inter alia,* medical records, lay evidence, and "the effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment." *Robbins,* 466 F.3d at 883, *citing* SSR 96-8p at *5 (available at 1996 WL 374184); 20 C.F.R. § 404.1545(a)(3); *Smolen v. Chater,* 80 F.3d 1273, 1281 (9th Cir.1996). However, the reviewing court must consider the entire record as a whole, weighing both the evidence that supports and detracts from the Commissioner's conclusion, and may not affirm simply by isolating a specific quantum of supporting evidence.

*Lingenfelter v. Astrue,* 504 F.3d 1028, 1035 (9th Cir. 2007).

## DISCUSSION

Glover challenges the ALJ's evaluation of his testimony, the lay testimony, and the opinions of treating physicians Drs. Dover and Sager. Glover subsequently contends that the ALJ should have found him disabled at step five in the proceedings for the period between his original December 17, 1994, onset date, the Commissioner's finding that he was disabled as of February 2, 2007.

### I.     Glover's Credibility

The ALJ gave Glover's testimony "little weight as it is found not to be very credible." Tr. 415. The ALJ found based this finding upon Glover's work history and the medical evidence. *Id.*

#### A.     Standards: Credibility

The ALJ performs a two-step analysis in her credibility finding. First, the ALJ determines if the claimant has shown an underlying impairment which may "reasonably be expected to produce pain or other symptoms alleged." *Lingenfelter,* 504 F.3d at 1036 (citing *Smolen,* 80 F.3d at 1273). If the claimant establishes such an impairment, and there is no finding of malingering, the ALJ proceeds to the second step, where she must provide "clear and convincing" reasons for finding a claimant not credible. *Id.*

The ALJ's credibility findings must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala,* 50 F.3d 748, 750 (9th Cir. 1995) (citing *Bunnell v. Sullivan,* 947 F.2d 341, 345-46 (9th Cir. 1991) (en banc)). The ALJ may consider objective medical evidence and the claimant's treatment history, as well as the claimant's daily activities, work record, and observations of physicians and third parties with personal knowledge of the claimant's functional limitations. *Smolen,* 80 F.3d at 1284.

The ALJ may additionally employ ordinary techniques of credibility evaluation, such as weighing inconsistent statements regarding symptoms by the claimant. *Id.* Once a claimant shows an underlying impairment, the ALJ may not, however, make a negative credibility finding "solely because" the claimant's symptom testimony "is not substantiated affirmatively by objective medical evidence." *Robbins*, 466 F.3d at 883.

### B. Analysis

#### a. Credibility and RFC Assessment

The court first notes that the ALJ's analysis reverses the manner in which she must consider credibility. The ALJ must consider a claimant's credibility in the course of assessing a claimant's residual functional capacity. 20 C.F.R. §§ 404.1545(a)(3); 416.945(a)(3); SSR 96-8p at *7 (available at 1996 WL 374184). Here, the ALJ first found that Glover's credibility was limited "to the extent" his statements "are inconsistent with the . . . residual functional capacity assessment . . . ." Tr. 409. No authority suggests an ALJ may reason that a claimant is not credible based upon the claimant's RFC assessment. The ALJ's finding that Glover is not credible based upon his RFC disregards the role of credibility analysis in determining an RFC and therefore should not be sustained.

#### b. Work History and Credibility

The ALJ first stated, "while it is felt the claimant has some discomfort in his hands for which he takes pain medication on an as needed basis, it is not credible that he was unable to find other work after being let go from his job as an Educational Director." Tr. 415. The ALJ went on to speculate that Glover left his job with the Hopi tribe because of his alcohol use, rather than conflicts with tribal management. *Id.* The ALJ concluded, "For whatever reasons the claimant left this job, it appears that he left of his own volition and not due to his medical impairments." *Id.*

7 - FINDINGS AND RECOMMENDATION

Glover stated that he left for a variety of reasons due to changes in management and his use of medical leave. Tr. 463. In response to the ALJ's questioning, Glover testified that he was not fired for drinking. Tr. 591-92. The record contains no evidence other than Glover's own testimony explaining why he left his job with the Hopi tribe. Therefore, the ALJ's speculation that Glover's testimony was inconsistent with any other reasons for leaving that job are not based upon the record. These findings should not be sustained.

The ALJ also stated that "since [Glover] left his prior job, the claimant has made little effort to find other work." Tr. 415. An ALJ may consider a claimant's work history in assessing a claimant's credibility. *Smolen*, 80 F.3d at 1284. Here the ALJ may cite a claimant's inconsistent work history prior to the claimant's alleged disability onset. *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002). However, chastising a disabled claimant for not working during the period in which he claims disability is inconsistent with the purpose of disability proceedings. The ALJ's reasoning is furthermore speculative and should not be sustained.

In summary, the ALJ's reasons for rejecting Glover's credibility as it pertains to his work activity is not based upon the record and should not be sustained.

      c.    **Medical Evidence and Credibility**

The ALJ also cited Glover's medical record in discounting his testimony. Tr. 415. The ALJ found, "The intensity of his allegations is not at all supported by the medical evidence" and "his allegations appear to be self serving and not supported by the medical evidence which basically only shows some pain in the thumbs and little elsewhere." *Id.* The ALJ based these findings upon evidence that Glover "has only been prescribed small amounts of Oxycodone and Oxycontin on an as needed basis." *Id.*

Once a claimant shows a medically determinable impairment, the ALJ must provide "clear and convincing" reasons for rejecting the claimant's symptom testimony. *Lingenfelter*, 504 F.3d at 1036. The ALJ relied upon medical evidence pertaining to Glover's thumbs only, and hence provided no reasons for rejecting his symptom testimony regarding his remaining arthralgias and gunshot wound to the face.

Regarding Glover's thumbs, the ALJ may cite the medical record as one factor among many in finding a claimant not credible. *Smolen*, 80 F.3d at 1284. However, the ALJ may not base her credibility findings "solely upon" the medical record. *Robbins*, 466 F.3d at 883. Because the ALJ's credibility findings pertaining to Glover's work history should not be sustained, Glover's medical record pertaining to his thumbs is the only remaining basis for rejecting his credibility. This court cannot affirm an ALJ's credibility finding based only upon the medical record, much less such a limited portion of the medical record, *id.*, and this reasoning should not be sustained.

Finally, the ALJ cited "medical evidence as reviewed by [medical expert] Dr. Rullman." *Id.* This citation, which does not amount to analysis, should not be affirmed because it is again based only upon the medical record with no reference to other findings.

### C. Conclusion: Credibility

In summary, the ALJ failed to provide adequately clear and convincing reasons for finding Glover not credible. This finding should not be sustained. The effect of the ALJ's error is discussed below.

### II. Medical Source Statements

Glover challenges the ALJ's evaluation of the opinions of treating physician Dr. Sager and examining physician Dr. Dover.

9 - FINDINGS AND RECOMMENDATION

A.     **Standards: Medical Source Statements**

Disability opinions are reserved for the Commissioner. 20 C.F.R. §§ 404.1527(e)(1), 416.927(e)(1). However, when making that determination, the ALJ generally must accord greater weight to the opinion of a treating physician than that of an examining physician. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). The ALJ must also generally give greater weight to the opinion of an examining physician over that of a reviewing physician. *Id.* If two opinions conflict, an ALJ must give "specific and legitimate reasons" for discrediting a treating physician in favor of an examining physician. *Id.* at 830. The ALJ may reject physician opinions that are "brief, conclusory, and inadequately supported by clinical findings." *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). In addition, the ALJ must ordinarily give greater weight to opinions rendered by specialists. 20 C.F.R. §§ 404.1527(d)(5), 416.927(d)(5).

B.     **Analysis: Medical Source Statements**

   a.     **Treating Specialist Dr. Sager**

Dr. Sager[2] evaluated Glover's hand pain at the request of his primary care provider on April 11, 2007. Tr. 541-43. Dr. Sager performed a clinical examination and reviewed Glover's medical records and x-rays. *Id.* Dr. Sager diagnosed "primary osteoarthritis, predominantly involving the spine and hands, the latter at the thumb carpometacarpal (basal) joint." Tr. 542. Dr. Sager provided a handout with occupational therapy treatment options, and stated that Glover was a surgical candidate for pain management. *Id.* Dr. Sager also stated that Glover could try splinting his hands (*id.*), and that narcotic medication would be reasonable. Tr. 543.

---

[2] The record does not indicate Dr. Sager's speciality, although his chart note is headed "Specialty Care Report - Rheumatology Clinic Followup Note." Tr. 539.

The ALJ discussed Dr. Sager's opinion at length. Tr. 411-12. The ALJ reiterated Dr. Sager's review of Glover's record and examination results. *Id.* The ALJ made no initial conclusion regarding this evidence. *Id.* Later in her opinion, while discussing medical expert Dr. Rullman's opinion, the ALJ wrote, "The opinion of Dr. Sager appears too speculative and not based on any actual medical findings." Tr. 414. As the ALJ herself noted, Dr. Sager based his opinion upon a review of Glover's electronic medical record, which includes x-rays, and clinical examination. Tr. 538-39. This does not amount to speculation. An ALJ may reject a physician's opinion because it is unsupported by notes or clinical findings, *Bayliss*, 427 F.3d at 1216, but this reasoning does not presently apply to Dr. Sager's opinion. This reasoning should not be sustained.

The ALJ also concluded that Dr. Sager and other physicians were "more swayed by the complaints of the claimant than actually considering the objective medical evidence." *Id.* The ALJ may reject a physician opinion predicated upon reports of a claimant properly deemed not credible. *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001). Here, the ALJ did not properly discredit Glover. The ALJ therefore cannot rely upon her credibility analysis to reject Dr. Sager's opinion. This reasoning also should not be sustained.

In summary, the ALJ did not provide adequate reasons to reject Dr. Sager's opinion.

  **b.** **Examining Physician Dr. Dover**

Dr. Dover evaluated Glover on June 14, 2005, and July 4, 2005. Tr. 347. Dr. Dover emailed a report of his examination to Glover's attorney on August 7, 2005. Tr. 327-29. This document does not contain letterhead or other indications of authenticity. *Id.*

Dr. Dover noted Glover's complaints of bilateral hand pain, bilateral hip pain, bilateral jaw

pain, and insomnia secondary to pain. Tr. 327. Dr. Dover also noted Glover's report that his tracheotomy should be closed, and that Glover could not afford to pay for the procedure without insurance. *Id.* Dr. Dover diagnosed bilateral severe osteoarthritis of the hands, right worse than left, bilateral severe temporomandibular joint ("TMJ") degeneration and pain, bilateral hip pain and osteoarthritis, chronic neck pain, insomnia, and gunshot wound to the face. Tr. 328.

Dr. Dover concluded that Glover has significant disease in his hands, jaw, and hips, which preceded 1999. *Id.* Dr. Glover based this finding upon Glover's report and x-rays consistent with this history, and stated that x-rays indicated that Glover has had significant osteoarthritis disease for about a decade. *Id.*

Regarding workplace limitations, Dr. Dover stated that Glover could perform activity for "about an hour" before experiencing significant pain. *Id.* Dr. Dover found that this pain prevented Glover from sitting, standing, walking, pushing or pulling for extended periods of time, and from any climbing, balancing, stooping, kneeling, crouching or crawling. Tr. 329. Dr. Dover wrote that Glover should avoid extreme heat, cold, wetness, humidity, and vibrations, and moving hazards. *Id.* Dr. Dover finally stated that Glover has marked manipulative limitations due to arthritis in his hands, could not talk for more than an hour, and could not use a computer for more than an hour. *Id.*

The ALJ cited Dr. Dover's indicated limitations. Tr. 413. The ALJ first found these limitations based upon Glover's subjective reports. *Id.* Dr. Dover based his opinion upon reviewing Dover's medical records and x-rays, and two clinical examination. Tr. 327-29. Because the ALJ did not properly reject Glover's testimony, she again erred in basing her rejection of a physician's opinion, in this instance Dr. Dover, upon Glover's testimony. This finding should not be sustained.

The ALJ also found that Glover's hearing testimony contradicted Dr. Dover's limitations. Tr. 413. The ALJ noted Glover's testimony that he could be active for five or six hours with the option to stand, sit, and walk. *Id.* Dr. Dover did not make any statement contradicting this testimony. This reasoning is therefore not based upon the record.

Finally, the ALJ also gave "greater weight to the opinion of impartial medical expert David R. Rullman, M.D., that limitation in the use of the claimant's hands is not supported by evidence of record." Tr. 413. Here the ALJ stressed that Dr. Rullman is board-certified in internal medicine, hematology, and oncology, while Dr. Dover is board-certified in family practice. *Id.* The record does not indicate what, if any, board examinations Dr. Dover has passed; the court here notes that Dr. Rullman's certifications in hematology and oncology are irrelevant to evaluation of Glover's gunshot wound to the face and arthralgias. The matter is insignificant however, because while an ALJ may ordinarily give greater weight to a specialist's opinion, 20 C.F.R. §§ 404.1527(d)(5), 416.927(d)(5), a nonexamining medical expert's opinion "cannot by itself constitute substantial evidence that justifies the rejection of the opinion of . . . an examining physician . . . ." *Lester*, 81 F.3d at 831. The ALJ's decision to give greater weight to Dr. Rullman's opinion rather than Dr. Dover's simply because Dr. Rullman has more board certifications is not based upon the correct legal standards. This reasoning should not be affirmed.

In summary, the ALJ also failed to adequately reject Dr. Dover's opinion.

### C.  Conclusion: Medical Source Statements

The ALJ's analysis of the opinions of Drs. Sager and Dover are not based upon the record or the correct legal standards. The effects of these errors are discussed below.

### III. Lay Witness Testimony

Glover asserts, in a caption, that the ALJ improperly evaluated testimony submitted by an unidentified lay witness. Pl.'s Opening Br. 15. Glover's submission does not point to the witness, the witness's testimony, any work-related limitations noted by the witness, or the ALJ's analysis. *Id.* at 15-16. Glover does not discuss lay witness testimony in his reply brief.

Because Glover makes no identifiable assertion of error, this court will not address any potential errors in evaluating lay testimony.

### IV. The ALJ's Step Four Findings

Glover asserts that the ALJ erroneously found that he could perform his past relevant work at step four in the sequential proceedings, and additionally asserts that the ALJ should have found him disabled at step five in the sequential proceedings.

At step four in the sequential proceedings, the ALJ determines if the claimant can perform his past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv); 416.920(a)(4)(iv). If the claimant can perform such work he is not disabled and the sequential evaluation concludes. The ALJ presently found that Glover could perform his past relevant work as an "educational director," and therefore found Glover not disabled. Tr. 415. The ALJ based this finding upon interrogatory answers submitted by a vocational expert (Tr. 415-16), and made no alternative step five findings.

In making her findings at step four the ALJ may draw upon a vocational expert's testimony to show that claimant can perform work in the national economy. 20 C.F.R. §§ 404.1560(b)(2); 416.960(b)(2). The ALJ's questions to the vocational expert must include all properly supported limitations. *Osenbrock v. Apfel*, 240 F.3d 1157, 1165 (9th Cir. 2001). Here, the ALJ relied upon

14 - FINDINGS AND RECOMMENDATION

an interrogatory submitted to the vocational expert based upon an RFC assessment which did not properly consider Glover's testimony, and the opinions of Drs. Sager and Dover. Tr. 415 (citing Ex. 22E #24 (Tr. 490)). The ALJ's indicated interrogatory assumed that Glover could perform the following activities, with associated limitations:

- sit eight hours per day, for one hour at a time
- stand and walk eight hours per day, for one hour at a time
- lift fifteen pounds occasionally
- lift ten pounds frequently
- avoid exposure to excess levels of dust
- get along with people, understand and follow directions
- make judgments, persist to the completion of tasks
- maintain attention and concentration
- react appropriately to stress and behave in an acceptable manner
- avoid work requiring fine assembly on more than an occasional basis
- use his fingers for keyboarding or writing up to one hour at a time
- continuous talking should be limited to one hour
- should avoid climbing ladders, scaffolds, and ropes, balancing, crouching, squatting, and crawling
- bending and kneeling should be limited to picking up things he has dropped
- avoid jobs requiring three dimensional perception or fine visual precision.

Tr. 490. The vocational expert stated that an individual with these limitations could perform

15 - FINDINGS AND RECOMMENDATION

Glover's past work as an Education Director. *Id.*

The ALJ failed to properly discredit Glover's testimony and the opinions of Drs. Sager and Dover. The ALJ's interrogatory cited above subsequently omitted reference to Glover's testimony that he could not stand more than thirty to forty-five minutes (Tr. 364), and could not perform any activity for more than five or six hours. Tr. 378. Dr. Dover endorsed the limitations indicated by the ALJ, but additionally stated that Glover could not lift anything over ten pounds. Tr. 329. Dr. Sager found it "medically reasonable" that Glover could not perform work activity for more than two-thirds of an eight hour day due to joint pain. Tr. 538. The vocational expert's response to the ALJ's interrogatory is therefore without probative value. The ALJ's step four finding should not be sustained.

Because the ALJ made no alternative step five findings, this court cannot review such findings.

## REMAND

The decision whether to remand for further proceedings or for immediate payment of benefits is within the discretion of the court. *Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000.), *cert. denied*, 531 U.S. 1038 (2000). The issue turns on the utility of further proceedings.

Under the "crediting as true" doctrine, evidence should be credited and an immediate award of benefits directed where: "(1) the ALJ has failed to provide legally sufficient reasons for rejecting such evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited." *Harman*, 211 F.3d at 1178 (quoting *Smolen*, 80

F.3d at 1292). In such circumstances the reviewing court must credit the improperly rejected evidence. *Vasquez v. Astrue*, 547 F.3d 1101, 1106-07 (9th Cir. 2008) (*en banc review denied*, 572 F.3d 586 (9th Cir. 2009)). It is axiomatic, however, that the reviewing court may not credit testimony and subsequently award benefits contrary to the Act. *See Vasquez*, 572 F.3d at 589 (O'Scannlain J., dissenting).

The ALJ failed to provide legally sufficient reasons for rejecting Glover's testimony. At his January 27, 2005, hearing, Glover testified that, as of approximately December 1994, he could sit forty-five minutes to one hour, and stand thirty to forty-five minutes. Tr. 364. He stated that he could lift "no more than ten or twenty pounds" in a repetitive motion (Tr. 365), could not use his hands for more than a few minutes at a time (Tr. 377), could not sit for long periods of time, and could not talk for more than an hour. Tr. 377. Glover also stated that he could not perform any activity for more than five or six hours. Tr. 378. At his March 26, 2008, hearing, Glover additionally stated that he cannot write with a "small pen" longer than fifteen minutes. Tr. 600.

The ALJ also improperly rejected the opinions of Drs. Dover and Sager. Dr. Dover endorsed many of the limitations indicated by the ALJ, but also stated that Glover could not lift anything over ten pounds (Tr. 329), and Dr. Sager additionally opined that Glover could not work more than two-thirds of an eight hour day due to joint pain. Tr. 538. This evidence all points towards a finding of disability. In such circumstances, the improperly rejected evidence should be credited. *Hammock v. Bowen*, 879 F.2d 498, 503-04 (9th Cir. 1989) (crediting as true erroneously rejected claimant testimony and physician opinions where treating physicians's opinions supported claimant's testimony). The court therefore credits this evidence and now discusses the effect of the credited

testimony and medical opinions under the second and third prongs of the *Harman* analysis.

In determining whether to award benefits or remand the matter for further proceedings the court must determine whether "outstanding issues remain in the record" under the second *Harman* prong. *Harman*, 211 F.3d at 1178. Neither party asserts that the record is insufficient. Three ALJ hearings, two ALJ decisions, and an opinion and remand order from this court have previously been conducted in this matter. The court finds the record sufficiently developed.

Therefore the court must finally determine whether the record clearly requires an award of benefits after the improperly rejected evidence is credited. *Harman*, 211 F.3d at 1178. In response to further interrogatories, the vocational expert stated that such an individual would be precluded from performing work in the national economy. Tr. 474-77. This testimony establishes that Glover may not perform work in the national economy at step five in the sequential proceedings. Consequently, Glover is disabled under the Commissioner's regulations.

## CONCLUSION AND RECOMMENDATION

The ALJ's decision is not based upon the appropriate legal standards or substantial evidence. Crediting the improperly omitted testimony establishes that Glover is disabled under Titles II and XVI of the Act from his December 17, 1994, alleged onset date. The ALJ's decision should therefore be reversed and remanded for the immediate calculation and award of benefits.

## SCHEDULING ORDER

The Findings and Recommendation will be referred to a district judge. Objections, if any, are due March 25, 2011. If no objections are filed, then the Findings and Recommendation will go under advisement on that date.

If objections are filed, then a response is due within 14 days after being served with a copy of the objections. When the response is due or filed, whichever date is earlier, the Findings and Recommendation will go under advisement.

IT IS SO ORDERED.

Dated this 10th day of March, 2011.

                                                                  JOHN V. ACOSTA
                                                            United States Magistrate Judge